UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

ROBERT LEBRON,

       Plaintiff,       **MEMORANDUM & ORDER**
                    15-CV-5008 (MKB)
    v.

THE CITY OF NEW YORK, JOSEPH NICOSIA,
and FRANCISCO AVVEATO,

       Defendants.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

  Plaintiff Robert Lebron commenced the above-captioned action on August 26, 2015 and filed an Amended Complaint on February 26, 2016, against Defendants the City of New York (the "City"), and Police Officers Joseph Nicosia and Francisco Avveato of the New York City Police Department ("NYPD"), (Compl., Docket Entry No. 1; Am. Compl., Docket Entry No. 11). Plaintiff asserts, *inter alia*, claims pursuant to 42 U.S.C. § 1983 against Defendants Nicosia and Avveato for false arrest and the denial of his right to a fair trial. (Am. Compl. ¶¶ 29–47). Plaintiff's claims arise from his arrest on April 22, 2014 for, *inter alia*, criminal possession of a controlled substance and resisting arrest. (*Id.* ¶¶ 7, 14, 18, 24.) Defendants Nicosia and Avveato ("Defendants") moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Defs. Mot. for Summ. J. ("Defs. Mot."), Docket Entry No. 32; Defs. Mem. in Supp. of Defs. Mot. ("Defs. Mem."), Docket Entry No. 32-7; Decl. of Paul Johnson in Supp. of Defs. Mot. ("Johnson Decl."), Docket Entry No. 32-1.) By Memorandum and Order dated March 31,

2018, the Court granted the motion in part and denied it in part.[1]  (Mem. and Order dated Mar. 31, 2018 ("March 2018 Decision") 35, Docket Entry No. 38.)  The Court also ordered Plaintiff to show cause why summary judgment should not be granted in favor of Officer Avveato as to the denial of the right to a fair trial claim based on Officer Avveato's lack of personal involvement.  (*Id.*)  The parties have submitted additional briefing on the issue.  (Resp. to Order to Show Cause, Docket Entry No. 40; Reply to Order to Show Cause, Docket Entry No. 41.)  For the reasons discussed below, the Court grants summary judgment in favor of Officer Avveato as to Plaintiff's claim for the denial of the right to a fair trial.

**I. Background**

The Court assumes familiarity with the facts as detailed in the March 2018 Decision and provides only a summary of the pertinent facts.  (March 2018 Decision.)  The following facts are undisputed unless otherwise noted.

On April 22, 2014, Plaintiff had an encounter with Officers Nicosia and Avveato, resulting in his arrest and prosecution.  At the time of the incident, Plaintiff resided on Sunnyside Avenue in Brooklyn, New York, and worked at a garage located nearby.  (Dep. of Robert Lebron ("Pl. Dep.") 11:22–24, annexed to Decl. of Michael Lumer ("Lumer Decl.") as Ex. 1, Docket Entry No. 34-1.)  On the morning of April 22, 2014, Plaintiff was at the home of his longtime girlfriend, Tiffany Simon, who resided on Dumont Avenue in Brooklyn with their children.  (Pl. Dep. 18:11–14, 49:6–8.)  Plaintiff drove his children to school, drove Simon to work, and

---

[1] The Court denied the motion as to Plaintiff's false arrest claim for his detention prior to the discovery of a controlled substance in Plaintiff's vehicle, and as to his denial of the right to a fair trial claim against Defendant Nicosia.  The Court granted the motion and dismissed Plaintiff's false arrest claim based on his detention after Defendants found a controlled substance in his vehicle, and ordered Plaintiff to show cause why summary judgment should not be granted in favor of Officer Avveato as to the denial of the right to a fair trial claim.  (March 2018 Decision 35, Docket Entry No. 38.)

eventually went to work at the garage. (Pl. Dep. 18:11–23, 19:3–13, 20:5–8.) Plaintiff was driving his grandfather's Dodge Caravan (the "vehicle"), which his grandfather had loaned to Plaintiff and Simon. (Pl. Declaration ("Pl. Decl.") ¶¶ 3–4, Docket Entry No. 35.)

According to Plaintiff, he encountered Defendants at lunchtime when he went to Golden Krust restaurant to buy food. (Pl. Dep. 20:20–24.) As he was entering the restaurant, Plaintiff tried to give a panhandler money, when one of the Defendants told Plaintiff not to do so and threatened to arrest him if he did. (Pl. Dep. 21:6–11.) When leaving the restaurant, Plaintiff gave the panhandler money and the officer told Plaintiff he could go to jail if he acted "stupid[ly]." (Pl. Dep. 22:9–11.) Defendants denied ever having this encounter with Plaintiff. (Defs. Dep. of Officer Nicosia ("Defs. Nicosia Dep.")[2] 128:5–20, annexed to Johnson Decl. as Ex. E, Docket Entry No. 33-3; Defs. Response to Pl. Statement of Material Facts Pursuant to Local Rule 56.1 ("Defs. Resp. to Pl. 56.1") ¶¶ 10–11, Docket Entry No. 33-1.)

Later that day, while returning to the garage after lunch, Plaintiff drove past Defendants as they sat in a marked police car on Sunnyside Avenue. (Pl. Dep. 31:2–20, 45:4–13; Pl. Dep. of Officer Nicosia ("Pl. Nicosia Dep.") 25:9–15, annexed to Lumer Decl. as Ex. 4, Docket Entry No. 34-4.) Plaintiff's garage was less than one block from where he saw Defendants. (Pl. Nicosia Dep. 83:8–84:16; Initialed Google Street Map, annexed to Lumer Decl. as Ex. 5, Docket Entry No. 34-5.) Plaintiff pulled up to his garage, parked the vehicle, and walked to the gate of his garage with his keys in hand to open the gate. (Pl. Dep. 23:14–17, 24:20–24.)

A few minutes after arriving at the garage, while Plaintiff was standing at the gate with his keys, Defendants appeared at the garage and told Plaintiff to "get the f - - k back" in the

---

[2] Plaintiff and Defendants submitted different excerpted portions of Nicosia's deposition testimony. The portions are referred to as "Pl. Nicosia Dep." and "Defs. Nicosia Dep.," respectively.

3

vehicle. (Pl. Dep. 23:18–19.) Plaintiff was shocked and did not understand the command or why Defendants were approaching him. (Pl. Dep. 24:1–8.)

The parties dispute whether Plaintiff was driving recklessly or violating vehicle or traffic laws while driving to his garage. According to Defendants, they approached Plaintiff because he was speeding, driving recklessly, and violating vehicle and traffic laws. (Defs. Resp. to Pl. 56.1 ¶¶ 20–22.) Defendants contend that Plaintiff was "traveling at a high rate of speed," above the speed limit, and was "driving recklessly" because Sunnyside Avenue is narrow and abuts a park where Plaintiff could have hit someone while traveling at the high rate of speed.[3] (Defs. Nicosia Dep. 27:6–25.) Plaintiff denies speeding, driving recklessly, or violating any vehicle or traffic laws while driving along Sunnyside Avenue. (Pl. Dep. 42:23–43:8.)

Defendants admit that they ordered Plaintiff to get back into the vehicle but deny using any profanity. (Defs. Resp. to Pl. 56.1 ¶ 25.) Plaintiff understood the command but did not get back into the vehicle. (Defs. Resp. to Pl. 56.1 ¶ 26; Defs. Statement of Material Facts Pursuant to Local Rule 56.1 ("Defs. 56.1") ¶ 5, Docket Entry No. 32-6.) Plaintiff also concedes that he did not re-enter his vehicle after Defendants approached him. (Pl. Dep. 24:1–3.)

Defendants handcuffed Plaintiff after he refused to get back into the vehicle, placed him in a police vehicle, seized his keys, and one or both of the officers searched the vehicle. (Pl. Dep. 25:6–11, 26:5–7, 48:14–19; Defs. 56.1 ¶¶ 6, 7.) While searching the vehicle, one of the officers told Plaintiff that he found a bottle of pills in the vehicle, and displayed the bottle to

---

[3] At the time of his deposition, Officer Nicosia did not recall whether he saw any children crossing the street or exiting the nearby park at the time of the incident. (Pl. Dep. of Officer Nicosia ("Pl. Nicosia Dep.") 94:13–24, annexed to Lumer Decl. as Ex. 4, Docket Entry No. 34-4.)

Plaintiff. (Pl. Dep. 29:8–10.) Plaintiff told the officer that the pills belonged to his "wife."[4] (Pl. Dep. 29:14–17.)

Although the parties agree that one of the officers found the bottle of pills in the vehicle, they dispute where in the vehicle the officer found the bottle and whether there was a prescription label on the bottle. Plaintiff contends that the bottle of pills was in the locked glove compartment of the vehicle. (Pl. Dep. 43:9–44:5; Pl. Decl. ¶¶ 6–8.) Plaintiff also claims that the pills were in the original pill bottle provided by the pharmacy, (Pl. Dep. 26:13–27:6, 43:9–18), but that one of the officers tore the label from the bottle after showing it to him. (Pl. Dep. 44:6–16.) Defendants deny removing any label from the pill bottle. (Defs. Resp. to Pl. 56.1 ¶ 35.) Defendants claim to have found the pill bottle in the center console of the vehicle, and that the bottle did not have a label. (Defs. Nicosia Dep. 47: 8–10, 47:20–35, 68:14–69:10.)

The parties also dispute whether Plaintiff resisted arrest. Defendants contend that Plaintiff refused to produce his hands when asked to do so and turned his body away from the officers while being placed under arrest. (Defs. Nicosia Dep. 63:16–20.) Plaintiff denies resisting arrest. (Pl. Decl. ¶ 9.)

Defendants took Plaintiff to the 75th precinct and later to Central Booking. (Pl. Statement of Material Facts Pursuant to Local Rule 56.1 ("Pl. 56.1") ¶ 53, Docket Entry No. 37; Defs. Resp. to Pl. 56.1 ¶ 36, Docket Entry No. 33-1.)

    a. **Arrest paperwork**

All of the paperwork associated with Plaintiff's arrest was prepared by and forwarded to the Kings County District Attorney's Office (the "DA's Office") by Officer Nicosia. Officer

---

[4] According to Plaintiff, in August or September of 2013, Simon's doctor prescribed hydrocodone after she had oral surgery. (Pl. Dep. 27:1–28:5; Simon Prescription for Hydrocodone, annexed to Lumer Decl. as Ex. 2, Docket Entry No. 34-2.)

5

Nicosia completed an NYPD complaint report and an NYPD arrest report on the date of the arrest. (Compl. Report authored by Joseph Nicosia ("Compl. Report"), annexed to Lumer Decl. as Ex. 7, Docket Entry No. 34-7; Arrest Report authored by Joseph Nicosia ("Arrest Report"), annexed to Johnson Decl. as Ex. D, Docket Entry No. 32-5.) In the reports, Nicosia stated, among other things, that he observed Plaintiff driving at a "high rate of speed," Plaintiff failed to comply with orders and resisted arrest, and that he recovered a pill case without a label containing eighteen hydrocodone pills in the center console of the car. (*Id.*) The officers arrested Plaintiff for disorderly conduct, resisting arrest, criminal possession of a controlled substance with intent to sell, and first-degree reckless endangerment. (Arrest Report.)

On the day of the arrest, Nicosia forwarded the Complaint and Arrest Reports to the DA's Office. (Pl. Nicosia Dep. 90:20–91:22.) Paralegal Darnell Howerton from the DA's Office interviewed Nicosia and prepared a Complaint Room Screening Sheet based on the interview. (Pl. Nicosia Dep. 105:22–108:20; District Attorney Complaint Room Screening Sheet ("Screening Sheet"), annexed to Lumer Decl. as Ex. 8, Docket Entry No. 34-8.) In addition to the information contained in the Complaint and Arrest Reports, the Screening Sheet noted that Officer Nicosia "observed a pill bottle with no label containing eighteen pills of oxycodone in plain view sitting out of the bottom of the center console," and that the pills belonged to Plaintiff's girlfriend. (*Id.*)

Avveato testified during his deposition that ordinarily he would expect that Nicosia, as the arresting officer, would be the person communicating with the DA's Office about Plaintiff's arrest. (Dep. of Francisco Avveato ("Avveato Dep.") 110:2–15, annexed to Lumer Decl. as Ex. 11, Docket Entry No. 40-2.)

### b. Prosecution of Plaintiff

The DA's Office charged Plaintiff in an April 22, 2014 Criminal Complaint with criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the seventh degree, obstructing governmental administration in the second degree, resisting arrest, and reckless driving. (Criminal Compl., annexed to Lumer Decl. as Ex. 9, Docket Entry No. 34-9.) Although the Criminal Complaint states that Plaintiff possessed "oxycodone," as identified by Officer Nicosia and by chemical analysis, (*id.*), according to an April 28, 2014 NYPD laboratory report, of the eighteen pills recovered from Plaintiff's car, the single pill that was analyzed was determined to be a hydrocodone pill (the "controlled substance"),[5] (Laboratory Report, annexed to Johnson Decl. as Ex. C, Docket Entry No. 32-4).

Plaintiff was arraigned on the charges on April 24, 2014, (Pl. Dep. 34:7–11), and returned to court four times after he was arraigned. (Pl. Dep. 34:22–36:7). On November 13, 2014, the court dismissed the case when Plaintiff accepted an adjournment in contemplation of dismissal of the charges. (Pl. Dep. 36:12–37:1; Certificate of Disposition, annexed to Lumer Decl. as Ex. 3, Docket Entry No. 34-3.)

## II. Discussion

### a. Standard of review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018); *see also Cortes v. MTA NYC Transit*, 802 F.3d 226, 230

---

[5] On May 19, 2014, Nicosia executed a supporting deposition in which he swore to the truth of the facts in the Criminal Complaint. (Nicosia Supporting Dep., annexed to Lumer Decl. as Ex. 10, Docket Entry No. 34-10.)

(2d Cir. 2015). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

    **b.   Denial of the right to fair trial claim and failure to intervene**

In response to the Court's order to show cause, Plaintiff argues that Officer Avveato failed to intervene to prevent Officer Nicosia from violating Plaintiff's right to a fair trial. Plaintiff contends that while Avveato "appears not to have had . . . direct communications" with prosecutors, "it is clear that he knew that Nicosia was providing [the DA's Office] with [the] falsified narrative, that doing so would be unconstitutional, and that he had a duty to report it." (Resp. to Order to Show Cause 1.) Plaintiff contends that Avveato "chose to do nothing" and, as a result, is "liable for his failure to intervene in Nicosia's affirmative misconduct and is not entitled to summary judgment on this cause of action." (*Id.*) In support of his argument, Plaintiff relies on *Aguirre v. City of New York*, No. 15-CV-6043, 2017 WL 4236552, at *12 (E.D.N.Y. Sept. 22, 2017), which held that the plaintiff would have stated a failure to intervene claim if the plaintiff had shown that one officer was aware that another officer was communicating the allegedly fabricated information to the district attorney's office. Plaintiff

argues that "Avveato's refusal to intervene renders him equally liable as his partner" because he was "aware that Nicosia would be in contact with prosecutors about the arrest as [Nicosia] was the arresting officer." (*Id.* at 4 (citing Avveato Dep. 110:2–15).)

Defendants argue that Plaintiff has not shown that Avveato was personally involved in fabricating evidence or that he had the opportunity to intervene. As to Avveato's personal involvement, Defendants argue that Plaintiff's arguments "fail to offer any factual evidence that [D]efendant Avveato forwarded any information to prosecutors regarding the claims at issue in this matter and therefore [D]efendant Avveato does not have any personal involvement in [P]laintiff's denial of a fair trial claim." (Reply to Order to Show Cause 2.) According to Defendants, "[i]t is undisputed that Officer Avveato neither prepared nor signed the documents forwarded to prosecutors," and therefore, Avveato cannot be held liable for Plaintiff's denial of the right to a fair trial. (*Id.* at 2–3.) In response to Plaintiff's claim that Avveato failed to intervene, Defendants argue that it fails because "Plaintiff has not shown that Officer Avveato knew what information was forwarded to prosecutors or that he participated in the drafting of the information forwarded to prosecutors." (*Id.* at 4.)

To establish a fair trial claim based on fabrication of evidence, a plaintiff must show that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Ganek v. Leibowitz*, 874 F.3d 73, 90 (2d Cir. 2017) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016)). Unlike a false arrest or malicious prosecution claim, "probable cause is not a defense to a claim for a denial of the right to a fair trial" based on the fabrication of evidence. *Garnett*, 838 F.3d at 277 (alteration omitted) (citing *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012)).

9

"[P]ersonal involvement of defendants in alleged constitutional deprivation is a prerequisite to an award of damages under [section] 1983." *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (internal quotation marks and citations omitted); *Colon v. Coughlin*, 58 F.3d 865, (2d Cir. 1995) (same); *see also Case v. City of New York*, 233 F. Supp. 3d 372 (S.D.N.Y. 2017) (dismissing right to a fair trial claim against some but not all officers for lack of personal involvement); *Contant v. City of New York*, No. 09-CV-2851, 2012 WL 1158756 (E.D.N.Y. Mar. 16, 2012), *report and recommendation adopted*, No. 09-CV-2851, 2012 WL 1165623 (E.D.N.Y. Apr. 9, 2012) (same). However, "law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases)). An officer may be liable for the preventable harm caused by the officer's failure to intervene during a constitutional violation where the officer "observes the [constitutional violation] and has sufficient time to act to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (citation omitted).

Plaintiff concedes that there is no evidence that Avveato fabricated any evidence or that he had any direct communications with the DA's Office. (*See* Resp. to Order to Show Cause 1 (Avveato "appears not to have had . . . direct communications" with prosecutors).) Nicosia prepared all of the paperwork and forwarded the paperwork to the DA's Office for Plaintiff's prosecution. (Pl. Nicosia Dep. 90:20–91:22.) Thus, Plaintiff has not shown Avveato's personal involvement in the denial of his right to a fair trial.

Plaintiff also fails to show that Avveato denied his right to a fair trial by failing to intervene. Although Avveato knew that Nicosia was the arresting officer and would therefore be

the person communicating with the DA's Office about Plaintiff's arrest, Plaintiff has not shown that Avveato knew when Nicosia spoke to the DA's Office or forwarded the paperwork to the DA's Office, or that Avveato even knew what information was contained in the paperwork. Without any evidence that Avveato knew what information Nicosia included in the paperwork, or that he knew Nicosia was forwarding the paperwork to the DA's Office, or was present when Nicosia spoke to the DA's Office, Plaintiff fails to meet his burden to show that Avveato had an opportunity to intervene. *See Figueroa*, 825 F.3d at 106; *Rodriguez v. City of New York*, 291 F. Supp. 3d 396, 417 (S.D.N.Y. 2018) (granting summary judgment on a failure to intervene claim where only one officer made statements to prosecutors and where there was "no basis in the record for a reasonable jury to find that [the other officers] had a realistic opportunity to intervene . . . in the statements made to the [District Attorney]); *Baksh v. City of New York*, No. 15-CV-7065, 2018 WL 1701940, at *12 (E.D.N.Y. Mar. 31, 2018) (granting summary judgment on a failure to intervene claim where the plaintiff failed to identify "evidence suggesting that the other Officer Defendants had a reasonable opportunity to prevent [the arresting officer] from allegedly submitting false information to the district attorney's office"); *Lanorith v. Truscelli*, No. 15-CV-617, 2017 WL 3634600, at *13 (E.D.N.Y. Aug. 22, 2017) (finding that a failure to intervene claim, based on the denial of the right to a fair trial, fails where the plaintiff fails to identify "evidence suggesting that [fellow officers] were involved in preparing the criminal complaint or were aware of the alleged false statements made by [the arresting officer] in the complaint and had a 'realistic opportunity to intervene to prevent the harm [to Plaintiff] from occurring'" (third alteration in original)); *Ashley v. City of New York*, No. 14-CV-5559, 2017 WL 9487192 (E.D.N.Y. Apr. 17, 2017), *report and recommendation adopted*, No. 14-CV-5559, 2017 WL 2972145, at *10 (E.D.N.Y. July 12, 2017) (finding that the plaintiff's arguments that officers

involved in supervision and paperwork concerning plaintiff's arrest "should have" or "must have" known that the arresting officer had allegedly violated the plaintiff's rights were "speculative" and could not defeat summary judgment).

### III. Conclusion

For the foregoing reasons, the Court grants summary judgment in favor of Officer Avveato as to Plaintiff's denial of the right to a fair trial claim.

SO ORDERED:

<u>    s/ MKB         </u>
MARGO K. BRODIE
United States District Judge

Dated: June 22, 2018
       Brooklyn, New York